**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

-vs-  Case No. 6:09-cr-00210-PCF-GJK

**GARY CHARLES NETH**
**NICOLE ANN ALDRIDGE**
**JANINE SCHELLER HASKELL**
**RICHARD BENJAMIN OWEN, JR.**
**CLARA ELLEN HANSEN**

_____

## ORDER

This case comes before the Court on the following:

1. Motion and Memorandum to Dismiss for Lack of Federal Jurisdiction by Clara Ellen Hansen (Doc. No. 95, filed Feb. 24, 2010); and

2. Response in Opposition to Defendants' Motion and Memorandum to Dismiss for Lack of Federal Jurisdiction (Doc. No. 111, filed Mar. 12, 2010).

**Background**

On October 22, 2009, a federal grand jury returned a two-count indictment against Gary Charles Neth, Nicole Ann Aldridge, Janine Scheller Haskell, Richard Benjamin Owen, Jr., and Clara Ellen Hansen (collectively "Original Defendants"). (Doc. No. 1, filed Oct. 22, 2009.) Count I of the indictment charges the Original Defendants with conspiracy to manufacture and to possess with the intent to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1). *Id*. Count II charges the Original Defendants with knowingly manufacturing and possessing with the intent to manufacture 100 or more marijuana plants in violation of 21 U.S.C. § 841(a)(1). *Id*. Ms. Haskell and

Mr. Owen entered separate plea agreements as to Count I. (Doc. No. 47, filed Dec. 24, 2009; Doc. No. 53, filed Jan. 15, 2010.)

On February 24, 2010, Ms. Hansen filed the present Motion to Dismiss for Lack of Federal Jurisdiction. (Doc. No. 95.) The Court granted Mr. Neth and Ms. Aldridge's Motion to Adopt the Motion to Dismiss on February 26, 2010.[1] (Doc. No. 96, filed Feb. 24, 2010; Doc. No. 101.) In the Motion to Dismiss, Defendants argue that there is no evidence that the alleged cultivation of marijuana resulted in a substantial impact on interstate commerce. (Doc. No. 95 at 2.) Thus, Defendants maintain that Congress' prohibition of the alleged actions is inconsistent with Article I, § 8 of the United States Constitution, as well as the Tenth Amendment, such that this Court lacks jurisdiction to prosecute the Defendants. (*Id*.) In response, the Government contends that Article I, § 8 of the United States Constitution vests in Congress the power to prohibit the local cultivation of marijuana, as set forth in *Gonzales v. Raich*, 545 U.S. 1 (2005). (Doc. No. 111 at 2.)

**Analysis**

The Commerce Clause provides Congress with the power to "[t]o regulate commerce . . . among the several states . . . ." U.S. Const. art. I, § 8, cl. 3. "The Commerce Clause power is plenary." *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004). It includes the power to regulate and protect the "instrumentalities of interstate commerce," even when the targeted "threat may come only from intrastate activities." *United States v. Lopez*, 514 U.S. 549, 558 (1995). It also includes the "power to regulate purely local activities that are part of an economic class of activities

---

[1] The Court will refer to Ms. Hansen, Mr. Neth, and Ms. Aldridge collectively as the "Defendants."

that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005); *Perez v. United States*, 402 U.S. 146, 151 (1971); *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942).

In 2005, the Supreme Court was presented with the question of whether Congress had the authority, pursuant to the Commerce Clause, to prohibit the local cultivation and use of marijuana via the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq. Raich,* 545 U.S. at 5. The respondents in *Raich* argued that the CSA's categorical prohibition of the manufacture and possession of marijuana as applied to the intrastate manufacture and possession of marijuana for medical purposes pursuant to California law exceeded Congress' authority under the Commerce Clause.[2] *Raich*, 545 U.S. at 16.

The Supreme Court began its analysis by noting that when "a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id*. at 17 (citing *Lopez*, 514 U.S. at 558). The Court then discussed its opinion in *Wickard v. Filburn*, 317 U.S. 111 (1942), which upheld the application of quota regulations[3] to the production of wheat for wholly personal consumption, stating that *Wickard* "establishes that Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Raich*, 545 U.S. at 18.

---

[2] In *Raich*, the respondents were suffering from a variety of serious medical conditions and had availed themselves of the use of medical marijuana in compliance with California's Compassionate Use Act of 1996. Cal. Health & Safety Code Ann. § 11362.5 (West Supp. 2005); *Raich*, 545 U.S. at 6. One of the respondents cultivated her own marijuana for personal use, while the other respondent relied on her caregivers to provide locally gown marijuana. *Raich*, 545 U.S. at 7.

[3] The quota regulations at issue in *Wickard* had been passed by Congress pursuant to the Agricultural Adjustment Act of 1938. *Wickard*, 317 U.S. at 114.

The Count found the similarities between the facts in *Raich* and *Wickard* to be "striking." *Raich*, 545 U.S. at 18.

> Like the farmer in *Wickard*, respondents are cultivating, for home consumption, a fungible commodity for which there is an established, albeit, illegal interstate market. Just as the Agricultural Adjustment Act was designated to control the volume of wheat moving in interstate and foreign commerce in order to avoid surpluses and consequently control the market price, a primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets.

*Id*. at 18-19. That the market in *Raich* happened to be an illegal one did not affect the analysis. *Id.* at 19 n.29 ("To be sure, the wheat market is a lawful market that Congress sought to protect and stabilize, whereas the marijuana market is an unlawful market that Congress sought to eradicate. This difference, however, is of no constitutional import. It has long been settled that Congress' power to regulate commerce includes the power to prohibit commerce in a particular commodity."). What the Court did find important, and what distinguished *Raich* from other cases invalidating statutes as beyond Congress' Commerce Clause authority, was the comprehensiveness of the economic component of the CSA. *Id.* at 22.

The *Raich* court also clarified that in assessing the scope of Congress' power, "[w]e need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but whether a rational basis exists for so concluding." *Raich*, 545 U.S. at 22 (citing *Lopez*, 514 U.S. at 557). Under this standard, the Court ultimately upheld the CSA, finding that a

-4-

rational basis existed for Congress to conclude that intrastate conduct, including marijuana grown for home consumption, would substantially affect its ability to regulate interstate commerce.[4] *Id.* at 21.

In the present case, the Defendants make the same argument the Supreme Court soundly rejected in *Raich*, mainly that the power vested in Congress by Article I, § 8, of the Constitution does not includes the power to prohibit the local cultivation of marijuana for personal use. (Doc. No. 95 at 2); *Raich*, 545 U.S. at 22. The Defendants maintain that there is no evidence to support a finding that the alleged cultivation of marijuana resulted in a substantial impact on interstate commerce, such that this Court lacks jurisdiction to prosecute the Defendants. (Doc. No. 95 at 2.) In response, the Government argues that Article I, § 8 of the United States Constitution vests in Congress the power to prohibit the local cultivation of marijuana, as made apparent by the recent Supreme Court decision in *Raich*. (Doc. No. 111 at 2.)

The Defendants have been indicted for violations of 21 U.S.C. § 841(a)(1), a provision of the CSA expressly upheld in *Raich*.[5] (Doc. No. 1); *Raich*, 545 U.S. at 13-14, 22. Notwithstanding this similarity, Defendants attempt to distinguish *Raich*, arguing that *Raich* addressed the competing and conflicting system of state regulation involving the use of medical marijuana, implicating interstate travel, unlike the present case, involving a set of state regulations that adequately and effectively regulate intrastate activity. (Doc. No. 95 at 13.) The *Raich* holding is not, however, limited to

---

[4] The Court summarized its analysis by concluding that "[t]he case for the exemption comes down to the claim that all locally cultivated product that is used domestically rather than sold on the open market is not subject to federal regulation. Given the findings in the CSA and the undisputed magnitude of the commercial market for marijuana, our decisions in *Wickard v. Filburn* and the later cases endorsing its reasoning foreclose that claim." *Raich*, 545 U.S. at 32-33.

[5] 21 U.S.C. § 841(a)(1) states in that "it shall be unlawful for any person knowingly or intentionally [] to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

situations involving conflicting state regulations. Instead, *Raich* upholds the prohibition of all intrastate, noncommercial cultivation, possession, and use of marijuana. *Raich*, 545 U.S. at 32-33. That the respondents in *Raich* were using marijuana in compliance with California law had no effect on the analysis. *Id*. at 31-32

Defendants next argue that the seizure of over 200 marijuana plants provides "limited, if any evidence" to suggest that the Defendants' cultivation was designed for purposes other than noncommercial, personal use. (Doc. No. 95 at 14.) Thus, Defendants contend that unlike the activities at issue in *Raich*, the alleged cultivation in this case is quintessentially nonecomonic and therefore beyond the scope of the Commerce Clause. (*Id.*) However, even if this Court were to accept the Defendants' assertion that over 200 marijuana plants were grown purely for personal use, the Supreme Court has directly addressed and rejected the contention that the intrastate, noncommercial cultivation, possession, and use of marijuana falls outside the scope of the Commerce Clause. *Raich*, 545 U.S. at 33. Instead, such cultivation was found to be "squarely within Congress' commerce power because the production of a commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that

commodity."[6] *Id*. at 19. "That the regulation ensnare[d] some purely intrastate state activity [was] of no moment." *Id.* at 22. Thus, Defendants fail to distinguish *Raich* from the present case.

In the Motion to Dismiss, Defendants dedicate a significant amount of time to the argument that, under *United States v. Lopez*, 415 U.S. 549 (1995), their alleged actions bear no substantial relationship to interstate commerce and therefore fall outside the scope Congress' commerce power. (Doc. No. 95 at 3-7.) Defendants also contend that an analysis of the "four reference points" provided in *United States v. Morrison*, 529 U.S. 598 (2000), further demonstrates that Congress has acted outside its authority. (Doc. No. 95 at 7-13.)

In *Raich*, the respondents presented nearly identical arguments under both *Lopez* and *Morrison*, arguments the Supreme Court soundly rejected.[7] *Raich*, 545 U.S. at 23. The *Raich* court distinguished *Lopez* and *Morrison*, first by noting that the statutory challenges at issue in *Lopez* and *Morrison* were markedly different from the challenge the respondents pursued. *Id.* In *Raich*, the respondents sought to excise individual applications of a concededly valid statutory scheme. *Id.* In

---

[6] The Defendants also appear to argue that the prohibition of the cultivation of marijuana for personal use is beyond the scope of Congress' commerce power because the Court cannot demonstrate that the homegrown marijuana purported to be seized substantially affects interstate commerce without improperly piling "inference upon inference." (Doc. No. 95 at 15.) However, as discussed previously, the *Raich* court found that in assessing the scope of Congress' power, "[w]e need not determine whether respondent's activities, taken in the aggregate, substantially affect interstate commerce in fact, but whether a rational basis exists for so concluding." *Raich*, 545 U.S. at 22 (citing *Lopez*, 514 U.S. at 557). The Court then went on to conclude that Congress did in fact have a rational basis for believing that failure to regulate intrastate manufacture and possession of marijuana would substantially affect interstate commerce, leaving a "gaping hole in the CSA." *Id*. at 22-23.

[7] In *Raich*, the Supreme Court noted that "[t]o support their contrary submission, respondents rely heavily on two of our more recent Commerce Clause cases [*Lopez* and *Morrison*]. In their myopic focus, they overlook the larger context of modern-era Commere Clause jurisprudence preserved by those cases. Moreover, even in the narrow prism of respondents' creation, they read those cases far to broadly." *Raich*, 545 U.S. at 23.

contrast, in both *Lopez* and *Morrison*, the parties asserted that a particular statute or provision fell outside Congress' commerce power in its entirety. *Id*. The *Raich* court found this distinction to be "pivotal" because, "as often reiterated 'where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise as trivial, individual instances of the class.'" *Id*. (citing *Perez*, 402 U.S. at 154). The *Raich* court went on to further distinguished these cases, finding that "[u]nlike [the activities] at issue in *Lopez* and *Morrison*, the activities regulated by the CSA are quintessentially economic," such that *Lopez* and *Morrison* cast no doubt on the CSA's constitutionality.[8] *Id.* at 25-26. Thus, *Lopez* and *Morrison* are not controlling in the present case, wherein the Defendants similarly seek to have this Court excise as trivial, individual applications of the CSA.[9] Accordingly, the Court finds that the contested provision of the CSA, 21 U.S.C. § 841(a)(1), does not exceed the scope of Congress' commerce power.

## Conclusion

Based on the foregoing, the Motion and Memorandum to Dismiss for Lack of Federal Jurisdiction by Clara Ellen Hansen (Doc. No. 95, filed Feb. 24, 2010) is **DENIED.**

---

[8] At issue in *Lopez* was the validity of the Gun-Free School Zones Act of 1990, which was a brief, single-subject statute making it a crime for an individual to possess a gun in a school zone. 18 U.S.C. § 922(q)(1)(A); *Lopez*, 514 U.S. at 549. "The Act did not regulate any economic activity and did not contain any requirement that the possession of a gun have any connection to past interstate activity or a predictable impact on future commercial activity." *Raich*, 545 U.S. at 23. In contrast, the Supreme Court found the contested portion of the CSA to be "at the opposite end of the regulatory spectrum." *Id*. at 24. At issue in *Morrison* was the Violence Against Women Act of 1994, which created a federal civil remedy for victims of gender motivated crimes of violence. 42 U.S.C. § 13981; *Morrison*, 529 U.S. at 610. The Supreme Court found this statute to be unconstitutional because, like the statute in *Lopez*, it did not regulate economic activity. *Raich*, 545 U.S. at 22-23.

[9] In light of the Supreme Court finding that the CSA regulates quintessentially economic activities, this Court need not re-evaluate the CSA under the substantial relationship analysis of *Lopez* or the four reference points provided in *Morrison* to determine whether the CSA substantially affects interstate commerce. *Raich*, 545 U.S. at 23.

**DONE** and **ORDERED** in Orlando, Florida on this _30th_____ day of March, 2010.

*Patricia C. Fawsett*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
GARY CHARLES NETH
NICOLE ANN ALDRIDGE
Clara Ellen Hansen